UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMANDA PERKINS; HEATHER C HOLST; TERRY J WILLAMS; TANYA C STANDIFER; and KARLEY MAYHILL, <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED SURGICAL PARTNERS INTERNATIONAL INC; THE BOARD OF DIRECTORS OF UNITED SURGICAL PARTNERS INTERNATIONAL INC; THE RETIREMENT PLAN ADMINISTRATION COMMITTEE OF UNITED SURGICAL PARTNERS INTERNATIONAL INC; and JOHN DOES 1-30, <br><br> *Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 3:21-CV-00973-X |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is the defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) and for lack of standing under Rule 12(b)(1). [Doc. No. 15]. For the reasons explained below, the Court **GRANTS** the motion. The plaintiffs have twenty-eight days to file an amended complaint curing the deficiencies outlined in this order.

1

# I. Factual Background

This is a putative class action suit for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 (ERISA). The plaintiffs are five former employees of United Surgical Partners International, Inc. (United Surgical) who previously participated in the now terminated United Surgical 401(k) Plan (the Plan). The Plan merged into the Tenet Healthcare Corporation 401(k) Retirement Savings Plan effective January 1, 2019. All participant account balances were transferred to the Tenet Plan, and the United Surgical Plan ceased to exist. So, the plaintiffs assert claims solely with respect to administration of the United Surgical Plan between April 15, 2015, and December 31, 2018 (the class period).

United Surgical was the Plan sponsor and named fiduciary during this period. Acting through its Board of Directors, United Surgical appointed the Retirement Plan Administration Committee of United Surgical Partners International, Inc. (the Committee) to, among other things, ensure that the investments available to the Plan participants were appropriate, had no more expense than reasonable, and performed well as compared to their peers.

The Plan at issue is a defined-contribution plan, which "provides for an individual account for each participant and for benefits based solely upon the amount

contributed to the participant's account."[1]  Unlike a defined-benefit plan, each participant has discretion to direct his or her plan contributions to one or more investment options in a lineup chosen by the plan's fiduciaries.  Each participant's account value fluctuates with changes in the value of the investment chosen by the participant.

Like all defined-contribution plans, the Plan incurred investment management fees and plan administration fees.  Investment management fees are fees charged by the companies that manage the investment options offered in the Plan and are usually paid out of a participant's account as a percentage of the participant's holdings, known as an expense ratio.  Plan administration fees include recordkeeping expenses, which is a catchall term for the suite of administrative services typically provided to a defined-contribution plan by the plan's recordkeeper.  Recordkeeping fees can either be paid directly from plan assets or indirectly by the plan's investments in a practice called "revenue sharing."  Revenue sharing payments are payments made by investments within the plan—typically mutual funds—to the plan's recordkeeper or to the plan directly to compensate for recordkeeping and trustee services that the mutual fund company otherwise would have to provide.

---

[1] 29 U.S.C. § 1002(34).

The plaintiffs bring two counts against the defendants: breach of the fiduciary duty of prudence against the Committee and failure to adequately monitor other fiduciaries against the Board of Directors and United Surgical.

Count one of the complaint alleges that the Committee breached its fiduciary duty of prudence in three ways: "(1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent in terms of cost; and (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs and/or better performance histories; and (3) failing to control the Plan's administrative and recordkeeping costs."[2]

Count two of the complaint alleges that the Board of Directors and United Surgical had a duty to monitor the Committee and ensure the Committee was adequately performing its fiduciary obligations. The plaintiffs allege that the Board and United Surgical breached this duty by failing to monitor and evaluate the performance of the Committee; failing to monitor the process by which the Plan's investments were evaluated and failing to investigate the availability of identical lower-cost funds; and failing to remove the Committee as a fiduciary whose performance was inadequate.

The defendants moved to dismiss the plaintiffs' complaint in its entirety for three reasons: (1) the plaintiffs fail to state a claim for breach of the duty of prudence and the breach of the duty to monitor; (2) the plaintiffs lack Article III standing; and

---

[2] Doc. No. 1 at 4–5.

(3) plaintiffs cannot support claims of liability against the Board of Directors or individual doe defendants.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[3] To survive a motion to dismiss, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face."[4] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[6] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[7]

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[8] Article III, section 2 of the U.S. Constitution

---

[3] *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2020).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

[7] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

[8] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

provides that the judicial power of the federal courts extends only to "cases" and "controversies."[9]  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."[10]

"To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision."[11]  The burden of proving these elements is borne by the party invoking federal jurisdiction.[12] "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element."[13]  "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim."[14]  The injury-in-fact prong "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy."[15]  This is true even in a purported class action—"even named plaintiffs who represent a class must allege and show that

---

[9] U.S. CONST. art. III, § 2.

[10] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

[11] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58, (2014) (cleaned up); *see also Duarte ex rel. Duarte v. Lewisville*, 759 F.3d 514, 517 (5th Cir. 2014) (similar).

[12] *Lujan*, 504 U.S. at 561.

[13] *Spokeo*, 578 U.S. at 338 (cleaned up).

[14] *Lujan,* 504 U.S. at 561 (cleaned up); *see also Ramming*, 281 F.3d at 161 ("Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.").

[15] *Susan B. Anthony List*, 573 U.S at 158 (cleaned up).

they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong."[16]

## III. Analysis

### A. Standing

The defendants challenge the plaintiffs' Article III standing to seek prospective relief, to challenge funds in which they never invested, and to challenge revenue-sharing fee agreements.

The Court first turns to the plaintiffs' claim for prospective relief. The plaintiffs seek an order enjoining the defendants from any further ERISA violations. The defendants contend that the plaintiffs lack Article III standing to seek prospective relief since the Plan no longer exists. The plaintiffs agree.[17] Therefore the Court grants the defendants' motion to dismiss on the plaintiffs' request for injunctive relief.

Next, the Court turns to the defendants' argument that the plaintiffs lack standing to challenge funds in which the plaintiffs never invested. Because the plaintiffs were participants in a defined-contribution plan, they could pick and choose investment options. So, the defendants argue, to establish standing, the plaintiffs must allege that they invested in the more expensive share classes that the alleged lower cost options could have replaced. But here, the defendants contend that the

---

[16] *Spokeo*, 578 U.S. at 338 n.6 (cleaned up); *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 628 (5th Cir. 2021) ("A plaintiff must demonstrate standing for himself or herself, not just for others he or she professes to represent.").

[17] Doc. No. 21 at 13 n.7.

7

complaint does not make such allegations and does not explain "whether or how Defendants' alleged failure to offer 'lower-cost share class mutual finds' had an actual negative impact on any of the Plaintiffs' individual investments."[18]

In response, the plaintiffs make three arguments. First, they argue that they have established individual standing by alleging that they have invested in the "Plan investments which are the subject of this lawsuit." They argue that the defendants have not shown that any more specificity is needed, and that the defendants have not disproved the plaintiffs' allegations that they are invested in the challenged funds. But the burden is on the plaintiff to prove standing, not on the defendants to disprove standing.[19]

Second, they argue that because this is a derivative action under section 1132(a)(2), the plaintiffs have standing to "seek relief that sweeps beyond their own injury" and can therefore seek recovery on behalf of the entire plan, even if they did not personally invest in every one of the funds that caused injury. The parties point to conflicting authority on the question of whether plaintiffs, who are participants in a defined-contribution plan, have standing to challenge funds in which they did not personally invest.[20] The Fifth Circuit has not weighed in on this

---

[18] Doc. No. 16 at 29.

[19] *See Lujan*, 504 U.S. at 561.

[20] *Compare, e.g.*, *Wilcox v. Georgetown Univ.*, No. CV 18-422 (RMC), 2019 WL 132281, at *8 (D.D.C. Jan. 8, 2019); *Patterson v. Morgan Stanley*, No. 16-cv-6568 (RJS), 2019 WL 4934834, at *5 (S.D.N.Y. Oct. 7, 2019), *with Khan v. PTC, Inc.*, No. 20-11710-WGY, 2021 WL 1550929, at *2 (D. Mass. Apr. 20, 2021). The plaintiffs argue that the cases the defendants cite are not dispositive because those cases involved challenges to specific funds as opposed to the process utilized by defendants that resulted in the selection of several imprudent funds. But the plaintiffs' complaint does challenge specific funds in addition to challenging the Committee's process. *See, e.g.*, Doc. No. 1 at 4 (alleging that the Committee breached its duty of prudence for maintaining *certain* funds in the Plan despite

question; however, like other courts, it has recognized that "[a] plaintiff must demonstrate standing for himself or herself, not just for others he or she professes to represent."[21] Indeed, "[t]hat ERISA authorizes a participant to sue for restoration of plan losses does not affect the Article III standing analysis."[22]

The Court agrees with the defendants. In the complaint, the plaintiffs allege that "[e]ach Plaintiff has standing to bring this action on behalf of the Plan because each of them participated in the Plan and were injured by Defendants' unlawful conduct."[23] And although the complaint alleges that the defendants' actions "cost the Plan and its participants millions of dollars," it contains no specific allegations as to how the plaintiffs sustained an individualized and particular injury.[24] The Court finds the plaintiffs' allegations conclusory. By failing to allege injury to their own investment accounts or their investment in of any of the challenged funds, the plaintiffs have alleged an injury to the Plan and participants generally, but not to the individual plaintiffs themselves.[25]

---

the availability of lower cost funds); Doc. No. 1 at 23 (alleging that 15 of the 18 funds were not in the lowest class share). Further, the plaintiffs in *Wilcox* also challenged the defendant's process of selecting and retaining investment options. *Wilcox*, 2019 WL 132281, at *5.

[21] *Ortiz*, 5 F.4th at 628.

[22] *Ortiz v. Am. Airlines, Inc.*, No. 4:16-CV-151-A, 2020 WL 4504385, at *13 (N.D. Tex. Aug. 5, 2020) (McBryde, J.) (citing *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020)), *aff'd in part, vacated in part, rev'd in part on other grounds*, 5 F.4th 622 (5th Cir. 2021)).

[23] Doc. No. 1 at 6; *see also id.* at 10 ("Plaintiffs participated in the plan and have suffered injuries as a result of Defendants' mismanagement of the Plan.").

[24] *See Wilcox,* 2019 WL 132281, at *8 ("'[A]lthough § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.' Thus, for either Plaintiff to have standing to sue about their defined contribution Plan, he must show fiduciary breaches that impair his individual account's value." (quoting *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008))).

[25] *See Garthwait v. Eversource Energy Co.*, No. 3:20-CV-00902 (JCH), 2021 WL 4441939, at *7

And finally, the defendants argue that plaintiffs lack standing to challenge revenue-sharing fee arrangements. They contend that the plaintiffs have failed to allege that they invested in any mutual funds that allegedly paid feeds via revenue sharing and therefore cannot show that they were harmed by revenue sharing. The plaintiffs do not specifically respond to this argument, nor is it clear from the complaint whether the plaintiffs were individually harmed by revenue sharing. The plaintiffs make no allegations that the revenue sharing fees are charged to all participants, regardless of which funds the plaintiffs invested in.[26] Therefore, the Court cannot conclude that the plaintiffs have properly alleged an injury from revenue sharing. The Court grants the defendants' motion on this ground.

The Court grants the defendants' Rule 12(b)(1) motion as to the plaintiffs' claim for prospective relief and as to the plaintiffs' standing to challenge certain funds and revenue sharing fees as the basis for an alleged breach of fiduciary duty. But the Court believes the plaintiffs may be able to establish standing by alleging the requisite facts for each element. Therefore, the Court dismisses the plaintiffs' claim without prejudice. Within twenty-eight days of this order, the plaintiffs may file an amended complaint addressing the deficiencies outlined above.

---

(D. Conn. Sept. 28, 2021) ("Plaintiffs have made no specific ownership allegations whatsoever. . . . [T]he Complaint is devoid of specific allegations that the named plaintiffs owned any of the mentioned funds at any point during the relevant time period.").

[26] *See id.* (finding that plaintiffs had standing to assert recordkeeping fee claims because they alleged that the fees are "charged to all Plan participants, regardless of which investment options they select" (citing *In re Omnicom ERISA Litig.*, No. 20-cv-4141, 2021 WL 3292487, at *10 (S.D.N.Y. Aug. 2, 2021) (same))).

### B.  Failure to State a Claim

The Court next turns to the defendants' Rule 12(b)(6) arguments. The defendants argue that the plaintiffs have failed to state a claim for the breach of the duty of prudence and the duty to monitor. The breach of duty to monitor claim is derivative of the breach of the duty of prudence claim,[27] so the Court will address the breach of the duty of prudence claim first.

**1.  Count One: Duty of Prudence**

The duty of prudence requires that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."[28] "[A] fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones."[29] So "a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones."[30]

> The prudence standard normally focuses on the fiduciary's conduct in making investment decisions, and not on the results. But when the alleged facts do not "directly address[ ] the process by which the Plan was managed," a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably "infer from what is alleged that the process was flawed."[31]

---

[27] *Singh v. RadioShack Corp.*, 882 F.3d 137, 150 (5th Cir. 2018).

[28] 29 U.S.C. § 1104(a)(1)(B); *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 960 F.3d 190, 196 (5th Cir. 2020), *cert. denied* 142 S. Ct. 706 (2021).

[29] *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 741 (2022) (cleaned up).

[30] *Id.* (cleaned up).

[31] *Main v. Am. Airlines Inc.*, 248 F. Supp. 3d 786, 793 (N.D. Tex. 2017) (O'Connor, J.) (quoting *Pension Benefits Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013)).

Accordingly, to state a claim for breach of duty of prudence, plaintiffs may "allege facts sufficient to raise a plausible inference that . . . a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative."[32]

The defendants challenge the plaintiffs' remaining allegations on the breach of duty of prudence on two grounds: (1) plaintiffs' allegations concerning the cost of the Plan's investment options do not support an imprudence claim and (2) their allegations that defendants charged excessive administrative fees are conclusory and do not support an imprudence claim.

The plaintiffs ask the Court to infer imprudence based on the circumstantial factual allegations in the complaint.  As circumstantial evidence of the defendants' imprudence, the plaintiffs allege that the Plan's total costs were the highest in its peer group, the Plan's recordkeeping and administrative costs were excessive during the class period, there was little to no change in plan investment options during the class period, certain funds had fees in excess of fees in similarly sized plans, and certain funds were not in the lowest fee share class available to the plan.  Because the Court has granted the defendants' Rule 12(b)(1) motion as to the plaintiffs' standing to challenge funds that they did not personally invest in, the Court does not address the defendants' Rule 12(b)(6) arguments as to the plaintiffs' challenge to individual funds or revenue sharing.  However, the Court will address the plaintiffs'

---

[32] *Id.* (quoting *Pension Benefits Guar. Corp.*, 712 F.3d at 719).

other allegations, which they argue that considered together support a showing of imprudent process.

The defendants contend that the plaintiffs' allegations concerning the purported costs of the Plan's investment options do not support an imprudence claim. They argue that the plaintiffs have not pled facts that plausibly suggest that the defendants' processes were flawed; instead, the plaintiffs take issue with the results of those processes. Specifically, regarding limited changes to the Plan's investments, the defendants argue that this does not show that the "Plan's fiduciaries were asleep at the switch" because the judicially noticeable documents—the Plan's Form 550s show that there were many changes to the majority of funds in the Plan between 2015 and 2018. Accordingly, the defendants argue that this allegation does not permit the Court to infer more than the mere possibility of misconduct.

In response, the plaintiffs argue that the fact that Plan fiduciaries made other changes is irrelevant because the unchanged funds were overpriced, and the defendants did nothing to remove them. Further, they contend that this raises a question of fact as to why the imprudent funds were not removed. The Court agrees with the plaintiffs. At this stage, the plaintiffs are not required "to rule out every possible lawful explanation for the conduct [they] challenge[]."[33] And although the defendants point to judicially noticeable Form 550s, the Court "may not rely on the parties' opinions about what proper inferences should be drawn from [those

---

[33] *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009).

documents]."[34]  Drawing all reasonable inferences in favor of the plaintiffs as the Court is required to do at this stage, the Court concludes that these allegations are sufficient.[35]  However, standing alone, this allegation does not support a claim for the breach of the duty of prudence.[36]

As to excessive administrative fees, the plaintiffs allege that the Plan's total costs were the highest in its peer group, which is an indicator that the Plan was poorly run.  The defendants contend that these allegations are conclusory and do not support an imprudence claim.  They argue that because the plaintiffs failed to allege that the specific services offered to the Plan and its participants were available from other providers at a lower price, reasonableness of the Plan's fees cannot be assessed.  Essentially, the defendants argue that the plaintiffs have failed to provide meaningful benchmarks against which the Court could assess these fees.

In response, the plaintiffs point to the NEPC 2019 Defined Contribution Progress Report, which found that "no plan with over 15,000 participants paid more than $69 per participant in recordkeeping and administrative fees and only 5% of the Plans surveyed paid $69 which is a maximum paid by any Plan with over 15,000 participants."[37]  So, plaintiffs conclude that the Court should infer a breach of

---

[34] *Main*, 248 F. Supp. 3d at 794.

[35] *Id.*

[36] *See Kong v. Trader Joe's Co.*, No. CV 20-05790, 2020 WL 7062395, at *3 (C.D. Cal. Nov. 30, 2020), *appeal docketed*, No. 90-56415 (9th Cir. Dec. 30, 2020) (ERISA does not "impose[] term limits on retirement plan fund offerings.").

[37] Doc. No. 21 at 16. The plaintiffs attempted to provide a link to the survey but only linked to the NEPC home page.

fiduciary duty because the Plan's per participant administrative and recordkeeping fees ranged from $71.28 to $98.35 during the class period.

While the pleading standard in these cases is unclear, in similar cases, some courts have required plaintiffs alleging breach of fiduciary duty to "provide a sound basis for comparison—a meaningful benchmark" to show that a prudent fiduciary in like circumstances would have acted differently.[38] While it is true that these cases are "context specific"[39] and that "there is no one-size-fits-all approach" to benchmarks,[40] several courts have rejected the Brightscope/ICI study median as a meaningful benchmark. These courts reason that because the ICI study does not distinguish between actively and passively managed accounts, it is an insufficient benchmark to plausibly allege imprudence.[41] Instead, these courts have held that the plaintiff must "plead that the administrative fees are excessive in relation to the *specific services* the recordkeeper provided to the *specific plan* at issue."[42]

---

[38] *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018).

[39] *Hughes*, 142 S. Ct. at 738.

[40] *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020).

[41] *See, e.g.*, *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1303 (D. Minn. 2021); *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-MMC, 2020 WL 5893405, at *3 n.9 (N.D. Cal. Oct. 5, 2020); *Kong*, 2020 WL 7062395, at *6.

[42] *Wehner v. Genentech, Inc.*, No. 20-CV-06894-WHO, 2021 WL 2417098, at *4 (N.D. Cal. June 14, 2021) (cleaned up); *see also Mator v. Wesco Distrib., Inc.*, No. 2:21-CV-00403-MJH, 2021 WL 4523491, at *7 (W.D. Pa. Oct. 4, 2021); *Smith v. CommonSpirit Health*, No. CV 20-95-DLB-EBA, 2021 WL 4097052, at *12 (E.D. Ky. Sept. 8, 2021) (distinguishing cases where plaintiffs had alleged more specific facts: "The plaintiff in *Sweda* also alleged that the fiduciary failed to assess the reasonableness of plan recordkeeping fees by soliciting competitive bids, and cited examples from four other university plans that had done so successfully."); *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at * 314 (N.D. Cal. Aug. 29, 2016) (plaintiff must allege "facts from which one could infer that the same services were available for less on the market" (citing *Young v. GM Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) ("plaintiffs did not plausibly allege that the fiduciaries agreed to pay excessive fees where they 'fail[ed] to allege that the fees were excessive relative to the services rendered'"))); *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 631 (D.N.J. 2010)).

Accordingly, the Court agrees with the defendants that the plaintiffs have failed to plead sufficient factual allegations about the Plan's offered services and fee structures for the Court to infer more than a possibility of misconduct. The Court grants the motion on this ground.

But because the plaintiffs may be able to cure these deficiencies with an amended complaint, the Court grants the plaintiffs twenty-eight days to do so.

### 2. Count Two: Duty to Monitor

Finally, the defendants argue that the plaintiffs cannot support claims of liability against the Board of Directors or the individual doe defendants for a breach of the duty to monitor. They argue that first, under Texas law the Board is not an entity that can be sued separate and apart from the corporation it serves, and second, the individual corporate directors cannot be held liable under Fifth Circuit precedent.

As to the Board of Directors, the defendants argue that the board lacks capacity to be sued under Texas law and should therefore be dismissed. Specifically, the defendants argue that under Rule 17, a party must have the capacity to be sued, and an entity's capacity to be sued is determined by state law. Therefore, they contend that because there is no provision of Chapter 21 of the Texas Business Organizations Code that authorizes suit against a corporate board of directors, and because no Texas case has held that a corporate board has separate capacity to be sued, the claims against the board should be dismissed. In response, the plaintiffs make the inverse argument that the defendants have failed to point to any authority forbidding the plaintiffs from suing a corporate board under Texas law. They point to numerous out

of circuit cases that have allowed an ERISA claim to advance against a board of directors. But none of these cases specifically address the capacity of a board of directors to be sued.

As to the doe defendants, the Court agrees with the defendants. The Fifth Circuit has "never recognized [a] theory of ERISA fiduciary liability" that holds corporate directors personally liable for failing to monitor fiduciaries appointed by the directors."[43] Therefore, the Court grants the motion as to the doe defendants.

The Court also need not address whether the Board has capacity to be sued under Texas law because under the same logic in dismissing the doe defendants, the Board of Directors should also be dismissed. The plaintiffs rely on *Blackmon v. Zachry Holdings, Inc.*[44] for the proposition that they can maintain an action for breach of the duty to monitor against the Board. But *Blackmon* relied on *In re Enron Corp. Securities, Derivative & ERISA Litigation*,[45] and in *Perez v. Bruister*, the Fifth Circuit cited in *In re Enron* as an example of how "[c]ourts have erroneously construed as an endorsement of the theory one statement that 'liability for the failure to adequately train and supervise an ERISA fiduciary arises where the person exercising supervisory authority was in a position to appoint or remove plan administrators and monitor their activities.'"[46]

---

[43] *Singh*, 882 F.3d at 150.

[44] No. 5-20-CV-988-DAE, 2021 WL 2190907, at *7 (W.D. Tex. April 22, 2021).

[45] 284 F. Supp. 2d 511 (S.D. Tex. 2003).

[46] *Perez v. Bruister*, 823 F.3d 250, 260 n.10 (5th Cir. 2016) (cleaned up).

In any event, the plaintiffs have also sued United Surgical—a party that has capacity to be sued—for breach of the duty to monitor. United Surgical acts through its Board of Directors,[47] so any separate claim against the Board is duplicative.

### IV. Conclusion

The Court **GRANTS** the defendants' motion to dismiss. Because the deficiencies outlined in this order could possibly be cured by amendment, the plaintiffs may amend their complaint within twenty-eight days of this order. Leave to amend does not extend to the plaintiffs' request for injunctive relief or to their claims against the Board or the doe defendants.[48] The plaintiffs may make no other changes than the ones this order addresses.

**IT IS SO ORDERED** this 18th day of March, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

.

---

[47] Doc. No. 1 at 8.

[48] The Court may deny leave to replead when amendment would be futile. *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003).