UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMANDA PERKINS; HEATHER C HOLST; TERRY J WILLAMS; TANYA C STANDIFER; and KARLEY MAYHILL,  *Plaintiffs*,  v.  UNITED SURGICAL PARTNERS INTERNATIONAL INC; THE RETIREMENT PLAN ADMINISTRATION COMMITTEE OF UNITED SURGICAL PARTNERS INTERNATIONAL INC.,  *Defendants*. | § § § § § § § § § § § § § § § § § § | Civil Action No. 3:21-CV-0973-X |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) and for lack of standing under Rule 12(b)(1). [Doc. No. 27]. For the reasons explained below, the Court **GRANTS** the motion. The plaintiffs have already amended their complaint once following a first motion to dismiss, so the Court **DISMISSES WITH PREJUDICE** the amended complaint.

**I. Factual Background**

This is a putative class action suit for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"). The plaintiffs are five

1

former employees of United Surgical Partners International, Inc. ("United Surgical") who previously participated in the now-terminated United Surgical 401(k) Plan ("the Plan"). The plaintiffs assert claims solely with respect to administration of the Plan between April 15, 2015, and December 31, 2018 ("the class period").[1]

United Surgical was the Plan sponsor and named fiduciary during the class period. Acting through its Board of Directors, United Surgical appointed the Retirement Plan Administration Committee of United Surgical Partners International, Inc. ("the Committee") to, among other things, ensure that the investments available to the Plan participants were appropriate, had no more expenses than reasonable, and performed well compared to their peers.

The Plan was a defined-contribution plan, "which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account."[2] Unlike a defined-benefit plan, each participant has discretion to direct his or her plan contributions to one or more investment options in a lineup the plan's fiduciaries chose. Each participant's account value fluctuates as the value of the participant's chosen investments changes.

Like all defined-contribution plans, the Plan incurred investment management fees and plan administration fees. Investment management fees are fees the companies that manage the investment options offered in the Plan charge, and they

---

[1] Effective January 1, 2019, the Plan merged into the Tenet Healthcare Corporation 401(k) Retirement Savings Plan. All participant account balances were transferred to the Tenet Plan, and the United Surgical Plan ceased to exist.

[2] 29 U.S.C. § 1002(34).

2

are usually paid out of a participant's account as a percentage of the participant's holdings, known as an expense ratio.  Plan administration fees include recordkeeping expenses, which is a catchall term for the suite of administrative services that the plan's recordkeeper typically provides to a defined-contribution plan.  Recordkeeping expenses can either be paid directly from plan assets or indirectly by the plan's investments in a practice called "revenue sharing."[3]  Revenue sharing payments are payments made by investments within the plan—typically mutual funds—to the plan's recordkeeper or to the plan directly to compensate for recordkeeping and trustee services that the mutual fund company otherwise would have to provide.

The plaintiffs bring one count against each of the defendants, alleging that the Committee breached its fiduciary duty of prudence and that United Surgical failed to adequately monitor other fiduciaries (specifically, the Committee).

Count one of the complaint alleges that the Committee breached its fiduciary duty of prudence in three ways: "(1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent in terms of cost; and (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs and/or better performance histories; and (3) failing to control the Plan's recordkeeping and administrative ('RKA') costs."[4]

---

[3] Doc. No. 24 at 19.

[4] *Id.* at 4.

Count two of the complaint alleges that United Surgical had a duty to monitor the Committee and ensure the Committee was adequately performing its fiduciary obligations, and that it breached this duty by (1) "[f]ailing to monitor and evaluate the performance of the Committee"; (2) "failing to monitor the processes by which the Plan's investments were evaluated," (3) "fail[ing] to investigate the availability of identical lower-cost funds"; and (4) failing to remove the Committee as a fiduciary whose performance was inadequate."[5]

Previously, the defendants moved to dismiss the plaintiffs' complaint. The Court granted the motion to dismiss but gave the plaintiffs the opportunity to cure their deficiencies by amending their complaint. The plaintiffs amended their complaint, and the defendants now move to dismiss the amended complaint for failure to state a claim and lack of standing.

## II. Legal Standards

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[6] Article III, section 2 of the U.S. Constitution provides that the judicial power of the federal courts extends only to "cases" and "controversies."[7] "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."[8]

---

[5] *Id.* at 36–37.

[6] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[7] U.S. CONST. art. III, § 2.

[8] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

4

"To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision."[9] "The party invoking federal jurisdiction bears the burden of establishing these elements."[10] "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element."[11] "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim."[12]  The injury-in-fact prong "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy."[13]  This is true even in a purported class action: "[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong."[14]

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the

---

[9] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58, (2014) (cleaned up); *see also Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 517 (5th Cir. 2014) (similar).

[10] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

[11] *Spokeo*, 578 U.S. at 338 (cleaned up).

[12] *Lujan,* 504 U.S. at 561 (cleaned up); *see also Ramming*, 281 F.3d at 161 ("Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.").

[13] *Susan B. Anthony List*, 573 U.S at 158 (cleaned up).

[14] *Spokeo*, 578 U.S. at 338 n.6 (cleaned up); *see Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 628 (5th Cir. 2021) ("A plaintiff must demonstrate standing for himself or herself, not just for others he or she professes to represent.").

light most favorable to the plaintiff."[15] To survive a motion to dismiss, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face."[16] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[18] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[19]

### III. Analysis

The Court will first address the standing arguments before turning to the argument that plaintiffs failed to state a claim.

### A. Standing

The defendants challenge the plaintiffs' Article III standing to seek prospective relief, to challenge funds in which they never invested, and to challenge revenue-sharing fee agreements.

In the Court's previous order on the first motion to dismiss, the Court granted "the defendants' Rule 12(b)(1) motion as to the plaintiffs' claim for prospective relief

---

[15] *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2020).

[16] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[18] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

[19] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

6

and as to the plaintiffs' standing to challenge certain funds and revenue sharing fees as the basis for an alleged breach of fiduciary duty."[20]  However, the Court permitted the plaintiffs to amend their pleadings "to establish standing by alleging the requisite facts for each element."[21]  The plaintiffs amended their pleadings, and the defendants again bring the same challenges.

First, the defendants argue that the plaintiffs lack standing to seek prospective relief.  They make this argument in two ways.  First, they argue that because the Plan no longer exists, the relief that the plaintiffs seek would not redress their injury.  In other words, since the Plan doesn't exist, the defendants owe no ongoing fiduciary duties in that regard, and therefore, the plaintiffs would not benefit from injunctive relief.  Second, defendants argue that the plaintiffs fail to establish how prospective relief would benefit them as *former* participants.  In sum, this is an argument about redressability.  The plaintiffs do not directly address redressability in their response, but they again "concede they cannot assert claims for injunctive relief because, as Defendants acknowledge, the Plan no longer exists."[22]  Therefore, the Court grants the defendants' motion to dismiss on the plaintiffs' request for injunctive relief.

Second, the defendants argue that the plaintiffs lack standing to challenge funds in which they never invested.  This argument largely mimics the earlier one in the first motion to dismiss.  The Fifth Circuit has yet to answer the question of whether participants in a well-defined contribution plan have standing to challenge

---

[20] Doc. No. 23 at 10.

[21] *Id.*

[22] Doc. No. 30 at 10 n.3.

funds in which they did not invest. Therefore, in its previous order the Court focused on the need for the individual plaintiffs to demonstrate standing for themselves, as is their burden.[23] Specifically, the Court asked for specific allegations of individualized and particular injuries.[24] In their amended complaint, the plaintiffs identify the challenged funds in which Holst, Williams, Standifer, and Mayhill participated—but not Perkins.[25] The particularized injury, they allege, stems from how the funds were used to pay revenue sharing, and therefore, each plaintiff was injured when they overpaid their share of RKA costs.

The defendants argue that the plaintiffs failed to demonstrate that they suffered any harm from the funds in which they did invest "due to the Plan including those funds in the investment lineup."[26] Specifically, the defendants complain that the plaintiffs failed to identify any superior funds that would have costed less yet generated greater returns. They further argue that the plaintiffs' reliance on the Brightscope/ICI study—a benchmark the Court already considered and rejected[27]— is insufficient to establish individualized harm. Lastly, the defendants argue that the plaintiffs lack standing to challenge revenue-sharing. In the Court's first order on the motion to dismiss, it stated that "[t]he plaintiffs make no allegations that the revenue sharing fees are charged to all participants, regardless of which funds the

---

[23] *See Lujan*, 504 U.S. at 561.

[24] Doc. No. 23 at 9 ("And although the complaint alleges that the defendants' actions cost the Plan and its participants millions of dollars, it contains no specific allegations as to how the plaintiffs sustained an individualized and particular injury." (cleaned up)).

[25] Doc. No. 24 at 5–6.

[26] Doc. No. 28 at 31.

[27] Doc. No. 23 at 15–16.

8

plaintiffs invested in."[28]  The plaintiffs respond by detailing how each plaintiff suffered injury by overpaying their share of RKA costs.

Reliance on a study does not necessarily establish—or fail to establish—standing.  The Court looks for an injury in fact, which it finds that plaintiffs Holst, Williams, Standifer, and Mayhill pled sufficiently here.  The Court looks to a sufficient causal connection, which it finds here in the plaintiffs' pleadings because the pleadings demonstrate how fiduciary breaches related directly to injury.  And the Court looks to a likelihood of redressability, which it finds in the plaintiffs' amended pleadings because the pleadings sufficiently allege how certain relief would remedy injury.

In conclusion, the Court grants the defendants' Rule 12(b)(1) motion as to the plaintiffs' request for injunctive relief.  However, the Court finds the amended pleadings are sufficient to establish standing as to Holst, Williams, Standifer, and Mayhill, but not Perkins.  Accordingly, the Court dismisses the claims for injunctive relief and the claims of Perkins on standing grounds.

### B. Failure to State a Claim

The Court now turns to the defendants' Rule 12(b)(6) arguments.  As with the original motion to dismiss, the defendants argue that the plaintiffs have failed to state a claim for the breach of the duty of prudence against the Committee and breach of the duty to monitor against United Surgical.  The claim for breach of the duty to

---

[28] Doc. No. 23 at 10.

monitor is derivative of the claim for breach of the duty of prudence,[29] so the Court will address the breach of the duty of prudence claim first.

### 1. Count One: Duty of Prudence

The duty of prudence requires that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."[30] "[A] fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones."[31] So "a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones."[32]

> The prudence standard normally focuses on the fiduciary's conduct in making investment decisions, and not on the results. But when the alleged facts do not directly address the process by which the Plan was managed, a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed.[33]

Accordingly, to state a claim for breach of duty of prudence, plaintiffs "may allege facts sufficient to raise a plausible inference that a superior alternative investment

---

[29] *See Singh v. RadioShack Corp.*, 882 F.3d 137, 150 (5th Cir. 2018).

[30] 29 U.S.C. § 1104(a)(1)(B); *see Schweitzer v. Inv. Comm. of Phillips 66 Savs. Plan*, 960 F.3d 190, 196 (5th Cir. 2020).

[31] *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 741 (2022) (cleaned up).

[32] *Id.* (cleaned up).

[33] *Main v. Am. Airlines Inc.*, 248 F. Supp. 3d 786, 793 (N.D. Tex. 2017) (O'Connor, J.) (cleaned up).

was readily apparent such that an adequate investigation would have uncovered that alternative."[34]

The Committee makes two arguments that mirror the original motion to dismiss. First, it argues that the plaintiffs' allegations concerning the purported costs of the Plan's investment options do not support an imprudence claim because the Court cannot infer imprudence from a lack of changes in the investment menu. Second, it argues that the allegations of unreasonable and excessive administrative fees are conclusory and do not support an imprudence claim.

Regarding the lack of changes in the investment menu, the plaintiffs re-hash their original argument that the Committee failed to offer available, identical lower-cost alternatives to some of the Plan's investments. They claim that "[v]irtually every court to consider a plan's retention of a more expensive share class when a cheaper share class was available . . . has held it gives rise to a plausible claim for breach of fiduciary duty."[35] As support for this argument, the plaintiffs state that in *Hughes v. Northwestern University*, the Supreme Court "upheld plaintiffs' allegation that the plan fiduciaries 'neglect[ed] to provide cheaper and otherwise-identical alternative investments.'"[36]

However, the Committee contests the legal validity of the plaintiffs' argument. Specifically, it correctly points out that that "[t]he Supreme Court in *Hughes* vacated and reversed the Seventh Circuit's holding that [the] plaintiffs' allegations in that

---

[34] *Id.* (cleaned up).

[35] Doc. No. 30 at 21.

[36] *Id.* at 20 (quoting *Hughes*, 142 S. Ct. at 741).

11

case 'fail[ed] as a matter of law, in part based on the court's determination that [plaintiffs'] preferred type of low-cost investments were available as plan options' thereby 'eliminat[ing] any concerns that other plan options were imprudent.'"[37] Just as important, as the Committee highlights, the Supreme Court held that a categorical rule is inconsistent with the context-specific inquiry that ERISA requires.[38]

The Court agrees with the Committee that the mere existence of lower-cost alternatives does not necessarily bring about a plausible claim; rather, the Court's inquiry is context-specific. And here, the plaintiffs failed to provide the necessary context by which the Court can infer imprudence. In their deficient attempt to provide context, the plaintiffs argue that "[t]he lower cost shares were available to the Plan during the Class Period and were identical to the Plan in all ways except price."[39] However, the amended complaint says nothing about the shares being "identical"; instead, it simply says that "[a]nother fiduciary breach stemming from Defendants' flawed investment monitoring system resulted in the failure to identify available lower-cost share classes of many of the funds in the Plan during the Class Period."[40] Pleadings that demonstrate plans being identical in every single way except price provide some context for the Court to see the plausibility of imprudence claims; however, the plaintiffs did not plead this when the Court gave them the opportunity.[41]

---

[37] Doc. No. 32 at 9 (quoting *Hughes,* 142 S. Ct. at 741).

[38] *Hughes,* 142 S. Ct. at 741.

[39] Doc. No. 30 at 22 (citing Doc. No. 24 at 31).

[40] Doc. No. 24 at 31.

[41] Additionally, as the Court more fully addresses in the following paragraphs, the Court

Next, the Committee argues that the plaintiffs' allegations of "unreasonable" and "excessive" administrative fees are conclusory and do not support an imprudence claim. The plaintiffs, to make these allegations, initially relied on benchmarks to demonstrate to the Court that the administrative fees were unreasonable and excessive when compared to the fees in the benchmarks. However, in its order on the first motion to dismiss, the Court wrote that "the plaintiffs have failed to plead sufficient factual allegations about the Plan's offered services and fee structures for the Court to infer more than a possibility of misconduct."[42] The Court came to this conclusion because of the plaintiffs' reliance on non-meaningful benchmarks, like the Brightscope/ICI study. It additionally informed the plaintiffs of precedent stating that "[they] must plead that the administrative fees are excessive in relation to the *specific services* the recordkeeper provided to the *specific plan* at issue."[43] In this motion to dismiss, the Committee picks up on the same arguments. It argues again that the Brightscope/ICI study is not a meaningful benchmark and that the other benchmarks that plaintiffs provide are also not meaningful. For example, defendants say the plaintiffs' proposed benchmarks are not meaningful because the plans are different sizes, the years of comparison are different, and the plaintiffs "use materially different methods of calculating per-participant fees for the Plan than for

---

previously rejected the plaintiffs' use of the Brightscope/ICI study as a dispositive benchmark to infer imprudence, and it does so again here as the plaintiffs attempt to utilize this study to conclude that the price of the funds was excessive.

[42] Doc. No. 23 at 16.

[43] *Id.* at 15 (cleaned up).

13

the [c]omparable [p]lans."[44] Like before, the crux of the Committee's argument is that the benchmarks are not meaningful, and therefore the comparisons do not demonstrate a plausible claim for breach of prudence.

In response, the plaintiffs argue that though certain benchmarks, like the Brightscope/ICI study, may not be effective by themselves to prove imprudence, they do provide useful measurements. Specifically, the plaintiffs ask the Court "to consider the [first amended complaint's] allegations of the ICI study as just one of the several benchmarks, that when considered together, infer Defendants' imprudent process."[45] Plaintiffs extensively detail for the Court how the various benchmarks that compare costs "highlight a glaring failure in the Plan fiduciaries' investment selection and monitoring process."[46]

Yet the plaintiffs fail to make factual allegations that allow the Court to see that those fees were unreasonable in light of the particular services that the Plan offered. Benchmarks can be helpful, but at the motion to dismiss stage the plaintiffs still need to plead facts about their own case that, coupled with meaningful benchmarks, allow for a context-specific inference of imprudence. The plaintiffs do not provide that. Their benchmarks do not aid the Court in making meaningful comparisons because the benchmarks have major differences, and, more importantly, their pleadings do not show context-specific facts that allow the Court to infer imprudence. The plaintiffs provided facts about an allegedly high cost, but they did

---

[44] Doc. No. 28 at 24–25.

[45] Doc. No. 30 at 24.

[46] *Id.*

14

not show why those costs were excessive *in light of* the services that the Plan offered. The Court informed the plaintiffs of this exact deficiency during the first motion to dismiss stage, and plaintiffs did not make the necessary amendments to correct the issues the Court identified. Accordingly, the Court finds that the plaintiffs have failed to plead sufficient factual allegations about the Plan's offered services and fee structures for the Court to infer more than a possibility of misconduct. The Court **GRANTS** the motion on this ground.[47]

### 2. Count Two: Duty to Monitor

Regarding the duty to monitor, United Surgical argues that the Court should dismiss the plaintiffs' derivative failure-to-monitor claim because there is no independent basis for a breach of the duty to monitor without a breach of the duty of prudence. The law is clear that "duty-to-monitor claims . . . inherently require a breach of duty by the appointed fiduciary."[48] For this reason, since the Court finds no breach of fiduciary duty, it finds no breach of the duty to monitor. The Court **GRANTS** the motion on this ground.

---

[47] As a final matter, multiple parties filed notices of relevant new authorities—none of which lie within the Fifth Circuit. "A movant seeking to file a supplemental brief must: (1) show that it has new information that was not available at the time it filed its motion . . . and (2) demonstrate that this information is relevant to the Court's analysis and would therefore aid the justiciable disposition of the case." *Silvas v. Equifax Info. Servs., LLC*, No. 3:19-CV-2932-K, 2020 WL 4000848, at *2 (N.D. Tex. July 15, 2020) (Kinkeade, J.) (cleaned up). Though the first prong is met with the new authorities, the second prong is not. These cases, though they provide some information on how other circuits resolve these questions, provide no binding case law. The Court weighs these cases in the same way it weighs other, non-binding precedent: informative. As such, the Court reviewed these new authorities in making its decision.

[48] *Singh*, 882 F. 3d at 150.

## IV. Conclusion

The Court **GRANTS** the defendants' motion to dismiss and **DISMISSES WITH PREJUDICE** the plaintiffs' amended complaint.

**IT IS SO ORDERED** this 10th day of March, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE