# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
April 11, 2024
Lyle W. Cayce
Clerk

_____

No. 23-10375
_____

AMANDA PERKINS, *Individually and on behalf of all others similarly situated*; HEATHER C. HOLST, *Individually and on behalf of all others similarly situated*; TERRY J. WILLIAMS, *Individually and on behalf of all others similarly situated*; TANYA C. STANDIFER, *Individually and on behalf of all others similarly situated*; KARLEY MAYHILL, *Individually and on behalf of all others similarly situated*,

        *Plaintiffs—Appellants*,

*versus*

UNITED SURGICAL PARTNERS INTERNATIONAL, INC.; RETIREMENT PLAN ADMINISTRATION COMMITTEE OF UNITED SURGICAL PARTNERS INTERNATIONAL, INC.; JOHN DOES 1-30,

        *Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-973

_____

No. 23-10375

Before JONES, BARKSDALE, and ELROD, *Circuit Judges*.

EDITH H. JONES, *Circuit Judge*:[*]

Plaintiffs Amanda Perkins, Heather Holst, Terry Williams, Tanya Standifer, and Karley Mayhill participated in a defined contribution plan established by their employer and governed by the Employee Retirement Income Security Act ("ERISA"). The Plaintiffs allege their employer, United Surgical Partners International, Inc. ("United"), together with the committee United tasked with overseeing the plan's administration, mismanaged the plan's investments and costs, in violation of ERISA. The Plaintiffs sued United and the committee, but the district court dismissed the Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), having concluded the Plaintiffs' allegations failed to support plausible duty of prudence and duty to monitor claims. The Plaintiffs challenge the dismissal in the wake of the Supreme Court's decision in *Hughes v. Northwestern University*, 595 U.S. 170, 142 S. Ct. 737 (2022). We agree with the Plaintiffs and, accordingly, REVERSE the judgment of the district court. In so doing, we express no opinion about the merits of the case.

## I. BACKGROUND

The Plaintiffs participated in United's 401(k) Plan ("Plan"). The Plan was a defined contribution plan[1] that United established to provide

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

[1] ERISA defines a "defined contribution plan" as "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

No. 23-10375

retirement benefits to employees of the company.[2] United appointed the Retirement Plan Administration Committee of United Surgical Partners ("Committee") and tasked it with managing the Plan's expenses and ensuring that the Plan's investments were appropriate.

The Plaintiffs, suing for themselves and for others similarly situated, allege that the Defendants mismanaged the Plan's assets between April 30, 2015, and December 31, 2018 ("Class Period"), and, in so doing, violated their fiduciary duties. Their Amended Complaint[3] raises two claims against the Defendants. In Count One, the Plaintiffs allege the Committee violated the duty of prudence that is incumbent upon ERISA fiduciaries. The Plaintiffs allege the Committee violated that duty in two ways. First, the Committee implemented a flawed process for selecting the Plan's investment options. Second, the Committee failed to manage and mitigate the Plan's recordkeeping costs. Count Two alleges United violated its duty to monitor the Committee's administration of the Plan.

The district court dismissed the Amended Complaint under Rule 12(b)(6) with prejudice. The district court concluded that the Plaintiffs' Count One allegations concerning the Committee's flawed process for selecting investment options were insufficient to support a plausible duty of prudence claim because "the plaintiffs failed to provide the necessary context by which the Court [could] infer imprudence." The district court reached a similar conclusion about the allegations concerning high administrative fees, concluding that although the Plaintiffs "provided

---

[2] In 2019, the Tenet Healthcare Corporation 401(k) Retirement Savings Plan subsumed the Plan.

[3] The district court dismissed the Plaintiffs' Original Complaint without prejudice. However, "[l]eave to amend [did] not extend to . . . [P]laintiffs' request for injunctive relief or to their claims against the Board of Directors [of United] or the [D]oe defendants."

No. 23-10375

facts about an allegedly high cost, . . . they did not show why those costs were excessive *in light of* the services that the Plan offered." (Emphasis in original). The district court dismissed the Count Two duty to monitor claim against United solely because the Amended Complaint failed to support a plausible duty of prudence claim against the Committee.

The Plaintiffs appealed.[4]

## II. DISCUSSION

We review the district's court's order granting a Rule 12(b)(6) motion to dismiss de novo and "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiffs." *Teeuwissen v. Hinds County*, 78 F.4th 166, 170 (5th Cir. 2023) (citation and quotations omitted). The well-settled pleading standards articulated in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), apply to duty of prudence claims brought under ERISA. *See Hughes*, 595 U.S. at 177, 142 S. Ct. at 742. To survive the Defendants' motion to dismiss, the Plaintiffs' Amended Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

### A.

ERISA fiduciaries are required to discharge their duties "solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a

---

[4] The district court also dismissed the Plaintiffs' request for injunctive relief under Federal Rule of Civil Procedure 12(b)(1), given that the Plaintiffs "concede[d] they cannot assert claims for injunctive relief because . . . the Plan no longer exists." The district court also concluded "the amended pleadings [were] sufficient to establish standing" for all the Plaintiffs except Perkins and, therefore, dismissed Perkins' claims. The Plaintiffs do not challenge these decisions on appeal.

No. 23-10375

prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). To determine the contours of this duty of prudence, the Supreme Court looks to the common law of trusts. *Tibble v. Edison Int'l*, 575 U.S. 523, 528–29, 135 S. Ct. 1823, 1828 (2015). Under that regime, a fiduciary "normally has a continuing duty of some kind to monitor investments and remove imprudent ones." *Id.* at 530, 135 S. Ct. at 1828–29. In the ERISA context, that means "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Id.*, 135 S. Ct. at 1829.

The Plaintiffs' duty of prudence claim against the Committee is two-fold. First, the Plaintiffs claim the Committee implemented a flawed process for selecting the Plan's investment options. Second, the Plaintiffs allege the Committee failed to monitor and mitigate the Plan's recordkeeping costs.

**1. Process for Selecting the Plan's Investment Options**

The Plaintiffs allege the Committee's failure to select the lowest-cost shares for the Plan demonstrates a flawed process for selecting the Plan's investment options. At a minimum, the Plaintiffs contend that this allegation supports a plausible duty of prudence claim.

At the pleadings stage, this court must consider allegations that a fiduciary "neglect[ed] to provide cheaper and otherwise identical alternative investments . . . in light of the principles set forth in *Tibble* to determine whether petitioners have stated a plausible claim for relief." *Hughes*, 595 U.S. at 176, 142 S. Ct. at 741.

Broadly speaking, there are two classes of shares—retail (i.e., investor) and institutional. These shares are identical, but retail shares are more expensive. Moreover, the funds in the Plan offered both types of shares and, based on the size of the Plan and individual funds therein, the

5

Committee could have ensured that *all* shares the Plan offered were the cheaper institutional shares. But the Committee failed to do that. In fact, as of 2018, 83% of the funds (15 out of 18) in the Plan had not invested in the lower-cost share class, and nine of these funds were not changed during the Class Period.

From these allegations, the Plaintiffs argue the court can reasonably infer that the Committee was asleep at the wheel, and that by not replacing the Plan's retail shares with the cheaper and otherwise identical institutional shares, the Committee breached its duty of prudence. Notably, at least six circuit courts faced with similar share-class allegations have held that a duty of prudence claim survives a Rule 12(b)(6) dismissal. *See Hughes v. Nw. Univ.*, 63 F.4th 615, 634–36 (7th Cir. 2023); *Forman v. TriHealth, Inc.*, 40 F.4th 443, 450–53 (6th Cir. 2022); *Kong v. Trader Joe's Co.*, No. 20-56415, 2022 WL 1125667, at *1 (9th Cir. Apr. 15, 2022); *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 107–10 (2d Cir. 2021); *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 483 (8th Cir. 2020); *Sweda v. Univ. of Pa.*, 923 F.3d 320, 331–34 (3d Cir. 2019).[5]

The Defendants do not dispute that retail shares and institutional shares are identical in all ways except cost. Instead, the Defendants argue that the Plaintiffs' duty of prudence claim warrants dismissal because the Plaintiffs failed to allege facts demonstrating the ways in which retail and institutional shares are "identical." But the Plaintiffs described the ways in which retail and institutional shares are alike. The Amended Complaint makes clear that these shares are identical in *all* ways *except* cost. The Plaintiffs also allege that, regardless of the class of shares selected, the funds

---

[5] The Defendants do not point to any contrary circuit court authorities, nor are we aware of any.

No. 23-10375

"hold identical investments and have the same manager." As a result, the more expensive retail shares cannot, from the Plaintiffs' perspective, be differentiated from the institutional shares by having "(1) a potential for higher return, (2) lower financial risk, (3) more services offered, (4) or greater management flexibility."

Next, the Defendants contend that the Plaintiffs' duty of prudence claim falls short because the "Plaintiffs offer no facts whatsoever rebutting the obvious alternative explanation" for United's decision to offer the more expensive retail shares. (Citation and quotations omitted). That "obvious alternative explanation," according to United, is that retail shares permit revenue sharing which, in turn, helps to defray and better allocate recordkeeping costs. But defraying recordkeeping costs is not the *only* plausible explanation for United's decision to include retail shares. Indeed, another plausible explanation is that the Committee included retail shares in the Plan due to mismanagement. *See Davis*, 960 F.3d at 483. Moreover, the Defendants' argument that they "obviously" included retail shares in the Plan to reduce recordkeeping costs is severely undercut by the Plaintiffs' allegation that the Plan's recordkeeping costs were significantly *higher* than those of comparable plans. *See Hughes*, 63 F.4th at 635–36 (The "Plaintiffs' version is especially plausible in light of their allegation that the [p]lans collectively paid about four to five times as much in recordkeeping fees as they should have.").

Finally, the Defendants assert that "the record . . . confirms that United Surgical changed Plan investments frequently throughout the case period, including at times changing share classes of its investments." To be sure, the Tenth Circuit held that dismissing a duty of prudence claim is proper where the plaintiffs *allege* that the defendants improperly included costlier shares, but there the documents the complaint referenced contradict the allegation that the shares in the plan were more expensive. *See Matney v.*

7

Case: 23-10375   Document: 61-2   Page: 8   Date Filed: 05/03/2024
Case 3:21-cv-00973-X   Document 50   Filed 05/03/24   Page 8 of 12   PageID 1158

No. 23-10375

*Barrick Gold of N. Am.*, 80 F.4th 1136, 1149–52 (10th Cir. 2023). But here, none of the documents referenced in the Amended Complaint appear to contradict Plaintiffs' claims or demonstrate that Defendants replaced a substantial number of retail shares with institutional shares. Instead, the Defendants point to *one* example in which they purportedly swapped share classes. A single example does not refute other instances in which the Defendants allegedly *did not* swap retail shares for less expensive institutional shares.

Because the Defendants' failed to sufficiently refute the Plaintiffs' allegations about pricier retail shares, we conclude that the Amended Complaint sufficiently alleges a plausible breach of the duty of prudence.

**2. Recordkeeping Costs**

The Plaintiffs also allege the Plan's high recordkeeping costs raise a plausible duty of prudence claim. "At the pleadings stage, plaintiffs [are] required to plausibly allege that [the defendant's] failure to obtain comparable recordkeeping services at a substantially lesser rate was outside the range of reasonable actions that the [defendant] could take as plan fiduciary." *Hughes*, 63 F.4th at 633 (applying *Hughes*, 595 U.S. at 177, 142 S. Ct. at 742). Thus, for this claim to survive dismissal, the Plaintiffs must have "pleaded sufficient facts to render it plausible that [the Committee] incurred unreasonable recordkeeping fees and failed to take actions that would have reduced such fees." *Id.* at 631.

According to the Plaintiffs, a plan's recordkeeping costs are "primarily dependent upon the number of participant accounts in the plan rather than the value of assets under management in the plan." In general, as the number of participants in a plan increases, the per-participant cost for recordkeeping services decreases. Because the Plan had over 15,000 participants in 2017 and 2018, it was "eligible for some of the lowest fees on

No. 23-10375

the market." Moreover, since at least the mid-2000s, fees for recordkeeping services have generally "decreased steadily."

Other plans with a similar number of participants paid significantly less for recordkeeping services that are similar to those which the Plan received.[6] In 2019, these plans' participants ranged from 10,072 to 18,674, and their individual record-keeping costs lay between $22 to $38. Similarly, between 2015 and 2018, the Plan had as few as 11,855 and up to 16,605 participants. Yet on average, the Plan paid about $83 per participant for these services, and specific amounts that ranged from $98.35 in 2018 down to $71.28 in 2016. By this reckoning, the Plan's participants paid significantly more.

Plaintiffs allege that the Defendants could have taken certain steps to mitigate the Plan's recordkeeping costs.[7] But they did not do so. Faced with similar allegations concerning recordkeeping costs, at least three other circuit courts have declined to dismiss a duty of prudence claim. *See Hughes*, 63 F.4th at 630–34; *Davis*, 960 F.3d at 482–83; *Sweda*, 923 F.3d at 330–35.

The Defendants do not dispute Plaintiffs' data concerning the Plan's recordkeeping costs during the Class Period and the costs incurred by

---

[6] According to codes in the Plan's 2018 Form 5500, the Plan received participant loan processing, recordkeeping and information management, and "recordkeeping fees" services. The Plaintiffs note that the recordkeeping costs for comparator plans in the Amended Complaint "do not necessarily include [fees for] participant loan processing." However, the "fees for those services are negligible." Indeed, "loan processing is a service that can be provided for next to nothing" and "many recordkeepers in recent years have entirely waived any fees associated with loan processing." Thus, the Plaintiffs conclude that "[p]articipant loan processing fees alone cannot account for [the] discrepancy" between the cost of the Plan's recordkeeping services and those of comparator plans.

[7] According to the Plaintiffs, there are steps that prudent fiduciaries take to minimize recordkeeping costs, such as regularly soliciting competitive bids and following Department of Labor guidelines for monitoring and scrutinizing recordkeeping costs.

Case: 23-10375   Document: 61-2   Page: 10   Date Filed: 05/03/2024
Case 3:21-cv-00973-X   Document 50   Filed 05/03/24   Page 10 of 12   PageID 1160

No. 23-10375

comparable plans. Instead, the Defendants contend, the Plaintiffs' recordkeeping fee allegations failed to include "allegations about the specific services rendered in exchange for fees." Thus, the Plaintiffs have failed to allege facts necessary to conduct a like-for-like comparison with other plans. Accordingly, "no court can infer that [the Plan's recordkeeping] fees were 'unreasonable,' let alone infer that permitting a plan to pay such a fee falls beyond the 'range of reasonable judgments' fiduciaries may make." (Quoting *Hughes*, 595 U.S. at 177, 142 S. Ct. at 742). We disagree and conclude Plaintiffs' allegations about comparative costs and services are sufficient to survive dismissal.

The Defendants then rely on other circuit courts' dismissals of duty of prudence claims predicated on recordkeeping costs. But those cases are distinguishable because the plaintiffs either compared recordkeeping costs for their plan to industry-wide averages or failed to compare their plans with similarly sized plans or did not offer a comparison between plans offering similar recordkeeping services. *See Matney*, 80 F.4th at 1155–58; *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 279–80 (8th Cir. 2022); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579–80 (7th Cir. 2022); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022); *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018). Here, although the Plaintiffs point to industry-wide averages, they also compare the Plan's recordkeeping costs with the costs for similar recordkeeping services provided to a similar number of plan participants.[8]

---

[8] The Defendants also rely on *Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th Cir. 2018), to argue the Plaintiffs failed to provide a meaningful comparison between the Plan's recordkeeping costs and those of other plans. *Meiners* did not involve a duty of prudence claim predicated on recordkeeping costs. *See id.* at 821. In *Meiners*, the Eighth Circuit addressed sufficient benchmarks for comparing funds to support a claim that the

No. 23-10375

Because, in light of the Supreme Court's decision in *Hughes* and circuit court decisions addressing similar allegations, the Plaintiffs' allegations support a plausible duty of prudence claim as to selection of investment options and minimizing recordkeeping costs, the claim's dismissal must be reversed.

The Plaintiffs' allegations concerning the shares offered in the Plan and the Plan's recordkeeping costs are sufficient to support a plausible duty of prudence claim.[9] Therefore, we conclude the district court erred in dismissing this claim at this early stage of the litigation.

**B.**

The district court dismissed the Plaintiffs' Count Two duty to monitor claim solely because it dismissed the duty of prudence claim.[10] Since that reasoning is no longer operative, the district court should decide in the first instance whether the Plaintiffs' duty to monitor claim satisfies Rule

---

defendants "breached their fiduciary duties when they failed to remove their inordinately expensive and underperforming funds from the [p]lan's options." *Id.*

[9] The Plaintiffs also made other allegations supporting their claim that the Committee breached its duty of prudence. But because we conclude the allegations concerning the classes of shares offered and recordkeeping costs support a plausible duty of prudence claim, we need not address whether these other allegations also support a claim for which relief can be granted. *See* FED. R. CIV. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if *any one of them* is sufficient." (emphasis added)); *see also* 5B C. Wright, A. Miller & A. Benjamin Spencer, FEDERAL PRACTICE AND PROCEDURE § 1357 (4th ed. 2024) ("If . . . the court concludes that the complaint states *any* legally cognizable claim for relief, the court must deny the motion to dismiss and permit the action to continue." (emphasis added)).

[10] The district court cited *Singh v. RadioShack Corp.*, 882 F.3d 137 (5th Cir. 2018), in which we stated that "duty-to-monitor claims recognized by other courts inherently require a breach of duty by the appointed fiduciary." *Id.* at 150.

Case: 23-10375 Document: 61-2 Page: 12 Date Filed: 05/03/2024
Case 3:21-cv-00973-X Document 50 Filed 05/03/24 Page 12 of 12 PageID 1162

No. 23-10375

12(b)(6). *See Wilson v. Stroman*, 33 F.4th 202, 213 (5th Cir. 2022) (refusing to determine whether the plaintiffs sufficiently pleaded a *Franks* violation in the first instance because "the district court is best suited to decide in the first instance whether each plaintiff here has adequately alleged [this] violation").

## CONCLUSION

We REVERSE the district court's order dismissing the Plaintiffs' duty of prudence and duty to monitor claims (but do not disturb the rulings noted in footnotes 3 and 4 *supra*) and REMAND for further proceedings in accordance with this opinion.